**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JESSICA BURCIAGA, RHIAN SUGDEN, VIDA GUERRA, BROOKE JOHNSON a/k/a BROOKE TAYLOR, JAIME EDMONDSON LONGORIA, EMILY SCOTT, JOANNA KRUPA, TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, ARIANNY CELESTE LOPEZ, JENNIFER WALCOTT ARCHULETA, EVA PEPAJ, and INA SCHNITZER a/k/a JORDAN CARVER, | Case No. |
| Plaintiffs, | **COMPLAINT** |
| - against - | |
| JUSTENUFF JACK, LLC d/b/a JUST ENUFF LOUNGE a/k/a JUST ENUFF LOUNGE GENTLEMEN'S CLUB and JOSE A. ARROYO III | |
| Defendants. | |

Plaintiffs JESSICA BURCIAGA, RHIAN SUGDEN, VIDA GUERRA, BROOKE JOHNSON a/k/a BROOKE TAYLOR, JAIME EDMONDSON LONGORIA, EMILY SCOTT, JOANNA KRUPA, TARA LEIGH PATRICK a/k/a CARMEN ELECTRA, ARIANNY CELESTE LOPEZ, JENNIFER WALCOTT ARCHULETA, EVA PEPAJ, and INA SCHNITZER a/k/a JORDAN CARVER, (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Complaint ("Complaint") against Defendant JUST ENUFF LOUNGE a/k/a JUST ENUFF LOUNGE GENTLEMEN'S CLUB and JOSE A. ARROYO III (collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of

- 1 -

Plaintiffs, each of whom are well-known professional models, to promote their strip club, Just Enuff Lounge a/k/a Just Enuff Lounge Gentlemen's Club located in Bridgeport, Pennsylvania ("Enuff" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Pennsylvania's statutory right of publicity, 42 Pa. Cons. Stat. § 8316; d) defamation; and e) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant Justenuff Jack, LLC is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 1019 West Chester Pike, Havertown, Pennsylvania 19083. Justenuff Jack,

LLC operates Just Enuff Lounge a/k/a Just Enuff Lounge Gentlemen's Club, which is located at 149 Boro Line Road, Bridgeport, Pennsylvania, 19405.

7.      According to publicly available records, Defendant Jose A. Arroyo III is an individual operating under the laws of the state of Pennsylvania, who is an Owner and/or CEO of Justenuff Jack, LLC.

8.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania because Bridgeport, Pennsylvania is where Defendants' principal place of business is located.

9.      A significant portion of the alleged causes of action arose and accrued in Bridgeport, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominately located in Bridgeport, Pennsylvania.

**PARTIES**

*Plaintiffs*

10.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

11.     Plaintiff Rhian Sugden ("Sugden") is a well-known professional model, and a resident of England.

12.     Plaintiff Vida Guerra ("Guerra") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff, Brooke Johnson (a/k/a Brooke Taylor) ("Johnson") is a well-known professional model, and a resident of Santa Barbara County, California.

14.     Plaintiff Jaime Edmondson Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

15.      Plaintiff Emily Scott ("Scott") is a well-known professional model, and a resident of Australia.

16.      Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Miami-Dade County, Florida.

17.      Plaintiff Tara Leigh Patrick (a/k/a Carmen Electra) ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

18.      Plaintiff Arianny Celeste Lopez ("Lopez") is a well-known professional model, and a resident of Los Angeles County, California.

19.      Plaintiff Jennifer Walcott Archuleta ("Archuleta") is a well-known professional model, and a resident of Maricopa County, Arizona.

20.      Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

21.      Plaintiff Ina Schnitzer (a/k/a Jordan Carver) ("Carver") is a well-known professional model, and a resident of Germany.

***Defendants***

22.      According to publicly available records, Defendant Justenuff Jack, LLC is formed under the laws of the state of Pennsylvania.  During times relevant to this action, Justenuff Jack, LLC operated Just Enuff Lounge a/k/a Just Enuff Lounge Gentlemen's Club in Bridgeport, Pennsylvania.

23.      According to publicly available records, and upon information and belief, Jose A. Arroyo III, in his capacity as principal, owner and/or CEO of Justenuff Jack, LLC maintained operational control over a/k/a Just Enuff Lounge Gentlemen's Club, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

24.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

25.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

26.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Fox.

27.     In the case of every Plaintiff, such appearance was false.

28.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

29.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

30.     Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few

photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's* "Neighborhood Knockout" contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

31.     That we know of, Burciaga is depicted in the photos in Exhibit "A" to promote Enuff on its Instagram and Facebook pages. This Image was intentionally altered to make it appear that Burciaga was either a stripper working at Enuff, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.     Burciaga has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Sugden is, and at all times relevant to this action was, is an English glamor model, actress, host, and spokeswoman who is one of Europe's most famous celebrities. Sugden has appeared in hundreds of magazines and is one of the most featured Page 3 girls of all time. Sugden was featured as a Page 3 girl as recently as December 2017. That made a tally for 2017

of five features. Sugden has been featured in a number of films and was a star competitor in Celebrity Big Brother. Sugden has an official subscription-based website and has marketed her own products including a calendar for many years. https://onlyfans.com/rhianmarie Ms. Sugden has been involved in a number of charities and is often a spokeswoman for the prevention of animal cruelty. Sugden has over 1 million Social Media Followers.

34.    That we know of, Sugden is depicted in the photo in Exhibit "B" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Sugden was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

35.    Sugden has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.    Guerra is a Cuban model currently living in the United States. Her first national exposure came when she appeared in a lingerie spread for *FHM* in December of 2002 and became "*FHM*'s "Model of the Year" in 2004. Since then, Guerra has been featured in many magazines, including *DUB, Smooth, Escape,* and *Open Your Eyes*. Guerra has made multiple appearances on several Spanish language television programs such as El Gordo y la Flaca (The Fat Guy and The Skinny Girl). She has also became a staple in music videos, appearing in "Shake Ya Tailfeather" performed by Nelly, P. Diddy, and Murphy Lee, from the Bad Boys II soundtrack, 2003, "The New Workout Plan" performed by Kanye West, 2004, and in "Obsession (No Es Amor)" performed by Frankie J ft. Baby Bash, 2005, among others. In addition, Guerra has appeared in a commercial for Burger King's Tender Crisp Bacon Cheddar Ranch, a number

of sketches on The Chappelle's Show, and the film, "National Lampoon's Dorm Daze 2." She lent her voice to the video game, "Scarface: The World Is Yours." In 2005, Guerra was voted Number 26 in *FHM*'s "Top 100 Sexiest Females" and has been named the winner of the magazine's "Best Butt Award". She also produced her own swimsuit calendars and accompanying "behind the scenes" DVDs and a 2006 DVD titled, "Vida Guerra: Exposed." She continues to be extremely in demand as a spokeswoman for fitness and fitness equipment, television shows, and movies. Guerra enjoys over 2,443,580 followers across Facebook, Instagram, and Twitter.

37.    That we know of, Guerra is depicted in the photo in Exhibit "C" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Guerra was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

38.    Guerra has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.    Johnson is a world-renowned model who has appeared in magazines such as *FHM*, *Maxim*, *Viva Glam*, and *Stuff*. She has also appeared in commercials and billboards such as Fredrick's of Hollywood, Coors Light, and Budweiser. In addition, Johnson has also been featured in countless other catalogs, billboards, television commercials and shows.

40.    That we know of, Johnson is depicted in the photo in Exhibit "D" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Johnson was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise

associated or affiliated with the Club.

41.    Johnson has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.    Longoria comes from a family of police officers. She graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting to become a cheerleader for the Miami Dolphins. Longoria and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Longoria was Playmate of the Month in the January 2010 issue of *Playboy*. She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song," and numerous other television, print, radio, and online outlets. Longoria and her husband, MLB Superstar Evan Longoria have 2 children.

43.    That we know of, Longoria is depicted in the photos in Exhibit "E" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Longoria was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

44.    Longoria has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.    Scott is and at all times relevant to this action was, an Australian DJ and model based in Sydney and London. She's been voted by multiple magazines in the United States, United Kingdom. and Australia as one of the world's sexiest women. Scott has graced over 30 covers for publications such as *Maxim, FHM*, and 10 features for *Playboy* editions throughout Europe. She's appeared in campaigns for Wonderbra, Lipton Iced Tea, and was featured in Robbie William's show visuals to support his worldwide Rock DJ tour, following the Robbie William's show Scott was cast in US hit 'Entourage'; for an episode in series 4. She has been chosen to be a contestant on 'Dancing With The Stars Australia', 'I'm A Celebrity Get Me Out Of Here' UK, 'Cirque Du Celebrity' UK and 'Love Island' UK. Scott kicked off her first DJ tour in 2008. Since then, she has played support slots for legendary House DJ Erick Morillo, Defected's Sam Divine and at festivals alongside Deadmau5, Tommy Sunshine, and Skrillex. Scott has mixed high profile compilations for major record labels such as EMI and headlined tours in many corners of the world. After her extensive ten-city tour across Southeast Asia, Scott was chosen to shoot the cover of *FHM* Malaysia's March 2015 edition as Australia's hottest export.

46.    That we know of, Scott is depicted in the photos in Exhibit "F" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Scott was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

47.    Scott has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.    Krupa is, and at all times relevant to this action was, a Polish American model, actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared on the cover of magazines such as *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim*, and twice for *Playboy*. Krupa has also graced the covers of South African *GQ*, and the Polish editions of *Cosmopolitan, InStyle, Glamour*, and *Grazia*. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA, and founded an animal rescue group, Angels For Animal Rescue, with her friend Gabi Gutierrez. In addition, Krupa has appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives of Miami" (2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010.

49.    That we know of, Krupa is depicted in the photos in Exhibit "G" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Krupa was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

50.    Krupa has never been employed at Enuff, has never been hired to endorse Enuff,

has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Electra is an actress, recording artist, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991 Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on *Baywatch* and MTV's *Singled Out.* She has since made the move to the big screen with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006, Electra became a published author with the release of her book, "How to be Sexy." She also formed the dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009, Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, *Oy Vey, My Son is Gay* and *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry songstress was on fire, turning up the heat for audiences, including *The Wendy*

*Williams Show*, Cyndi Lauper's *Home For The Holidays* charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her new perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has over 2.9 million Facebook followers, 1 million Instagram followers, and 364 thousand Twitter followers.

52.    That we know of, Electra is depicted in the photos in Exhibit "H" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Electra was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

53.    Electra has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.    Lopez is an American model, businesswoman, and celebrity. Lopez is recognized as one of the most consistent and most popular personalities of UFC where she has worked as an Octagon Girl since 2006. Lopez was the Co-Host of the popular Velocity TV show, *Overhaulin'*. She is adored around the world for her exotic beauty and great relationship with her fans. Lopez booked her first modeling job when she was just four months old. She excelled in cheer, dance, and gymnastics before attending the University of Nevada Las Vegas (UNLV) to pursue a degree

in Fitness Management and Nutrition. Fluent in Spanish, Lopez has quickly become one of the most sought-after talents in the modeling world and has appeared on the covers of some of the world's most foremost magazines including, *Playboy, Maxim US, FHM, Maxim Korea, Maxim Philippines, FHM Australia* and *UFC* magazines. In addition to modeling, Lopez has hosted television shows, appeared in short films and recorded some original music. Ms. Celeste is in an elite class of Social Media influencers with over 3.2 million Instagram followers, over 704 thousand Twitter followers and an incredible 6 million fans on Facebook combined with her personal website.

55.    That we know of, Lopez is depicted in the photos in Exhibit "I" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Lopez was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

56.    Lopez has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

57.    Archuleta is a model, actress, and reality TV star. She became the *Playboy* "Playmate of the Month" in August 2001 and subsequently launched her own website and was chosen by Carmen Electra to model for her celebrity guest photographer photo shoot on www.playboy.com. She also appeared in several music videos, including videos for Justin Timberlake, Stereophonics, and Marc Anthony. During her first pregnancy, Archuleta appeared on the cover of *Holistic Health Magazine* and then posed for the covers of magazines, such as *Moves, American Curves, Muscle & Fitness, Hers, Physical, Iron Man, VP Racing Fuel,*

*Performance Audio and Sound, AtoZ, Planet Muscle, 944, Stun,* and *People* (Australia). In 2005, Archuleta along with Scarlett Keegan and Destiny Davis, were given keys to Las Vegas by the mayor in appreciation for posing for a calendar promoting the city. Later that year, Archuleta appeared in the movie American Pie: Band Camp. In 2008, she also acted in the movie *The Pool Boys* and was featured on many television shows such as *The Weakest Link, Street Smarts, Dog Eat Dog, Wild On!, Russian Roulette, Howard Stern, MTV Cribs, Entertainment Tonight, Best Damn Sports Show Period, Ripley's Believe It or Not, The Other Half,* and was featured on *E! True Hollywood Story* and *Mom Time TV*. Currently, Archuleta is the spokesperson for Ciclon rum and Bally's slot machine. She is also now living in Arizona and is raising her three children with her husband and former NFL safety, Adam Archuleta. She enjoys over 181,147 Facebook, Twitter, and Instagram followers.

58.     That we know of, Archuleta is depicted in the photo in Exhibit "J" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Archuleta was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

59.     Archuleta has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

60.     Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004.  Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign

61.     That we know of, Pepaj is depicted in the photo in Exhibit "K" to promote Enuff on its Facebook page. This Image was intentionally altered to make it appear that Pepaj was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

62.     Pepaj has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

63.     Carver is a German glamour model and actress based in the United States. Carver became a commercial spokeswoman for online German consumer electronics giant Redcoon. She set a record by appearing on the cover of Britain's Zoo magazine six times. Carver won the contest for the racing sport seat production company COBRA and became their spokes model, a position she held until recently. She later won second place on the Top 100 Internet Model Newcomer of the Year list after being nominated by Break Media. She has over 2 million followers on Instagram, over 636 thousand followers on Twitter, and over 18 thousand followers on Facebook.

64.     That we know of, Carver is depicted in the photos in Exhibit "L" to promote Enuff on its Facebook page. These Images were intentionally altered to make it appear that Carver was either a stripper working at Enuff that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

65.     Carver has never been employed at Enuff, has never been hired to endorse Enuff, has never been otherwise associated or affiliated with Enuff, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer,

damages as a result of same.

***Defendants' Business***

66.    Upon information and belief, both Defendants operated, during the relevant time period, Enuff, where they engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

67.    Upon information and belief, and in furtherance of its promotion their promotion of Enuff, Defendants own, operate and control Enuff's social media accounts, including its Facebook, Twitter, and Instagram accounts.

68.    Defendants used Enuff's Facebook, Twitter, and Instagram accounts to promote Enuff, and to attract patrons thereto.

69.    Defendants did this for their own commercial and financial benefit.

70.    Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as a stripper working at Enuff, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

71.    Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Enuff to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

72.    As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Enuff and at no point have any of the Plaintiffs ever endorsed Enuff, or otherwise been affiliated or associated with Enuff.

73.    All of Defendants' activities, including their misappropriation of Plaintiffs'

Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and

Defendants did not compensate Plaintiffs for their use of their Images.

74.    As such, Plaintiffs have never received any benefit from Defendants' use of their

Images.

***Standard Business Practices in the Modeling Industry***

75.    It is common knowledge in the modeling industry that the hiring of a model for a

commercial purpose involves a particularized methodology and process.

76.    The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following

factors: a) the reputation, earning capacity, experience, and demand of that particular model; b)

the location where the photo shoot takes place, and the length thereof; c) where and how the

images are going to be used by the client (*e.g.*, company website, social media, television

commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the

"term") the rights to use the photos will be assigned.  Most licenses to use a model's image are

for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

77.    As detailed above, Defendants knowingly, and without the prior consent of any of

the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in

order to promote Enuff by and through various marketing and promotional mediums including,

without limitation, Enuff's website, Twitter, Facebook, and Instagram.

78.    Defendants showcased Plaintiffs' Images on Enuff's social media pages to create

the false impression that Plaintiffs worked at Enuff, endorsed, promoted or sponsored same, or

were otherwise associated or affiliated with same.

79.    Defendants did so to attract clientele to Enuff, promote Enuff, and thereby generate revenue for Defendants.

80.    Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Enuff.

81.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

82.    In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

83.    This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are strippers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

84.    At no point were any of the Plaintiffs ever affiliated with Enuff, or Defendants.

85.    Each of Plaintiffs' Images was used without her consent.

86.    At no point was any Plaintiff ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

87.    Neither Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

88.    Neither Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Enuff website, Twitter, Facebook, or Instagram accounts.

89.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her

Images.

90.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)

91.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

92.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

93.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Enuff, or agreed to appear in Enuff's advertisements.

94.     Given the false and misleading nature of the advertisements, Defendants had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

95.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Enuff.

96.     Insofar as Defendants published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

97.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with the Club.

98.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

99.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

100.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

101.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

102.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

103.    Defendants used Plaintiffs' Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Enuff, or worked at, sponsored, or approved of Enuff's goods, services or commercial activities.

104.    This was done to promote and attract clientele to Enuff, and thereby generate revenue for the Defendants.

105.    Thus, this was done in furtherance of Defendants' commercial benefit.

106.    Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Enuff, nor worked at, sponsored, or approved of Enuff's goods, services or commercial activities, Defendants nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Enuff.

107.    Defendants knew that their use of Plaintiffs' Images would cause consumer

- 21 -

confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

108.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

109.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**THIRD CAUSE OF ACTION**
**(Right of Privacy)**

110.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

111.    As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Pennsylvania law.

112.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

113.    Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Enuff's website or related social media accounts as part of Defendants' advertising campaign.

114.    At all relevant times, Enuff's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

115.    Enuff's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

116.    Plaintiffs are informed and believe and hereon allege that Defendants posted and

publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

117.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

118.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

119.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Enuff.

120.    At no point did any or either Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

121.    Defendants were at all relevant times aware that they never received any of the Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

122.    At no point did Defendants ever compensate Plaintiffs for their use of the Images.

123.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.


**FOURTH CAUSE OF ACTION**
**(Right of Publicity, Unauthorized Use of Name or Likeness: 42 Pa. Cons. Stat. § 8316)**

124.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

125.   As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

126.   Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

127.   As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Fox advertising.

128.   Defendants did so without any Plaintiff's consent, written or otherwise.

129.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' images and likenesses on various occasions, via different mediums, after the initial date of the posting of their images and likenesses and through the filing of this complaint.

130.   Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

131.   Defendants were at all relevant times aware that they never received any of the Plaintiffs' permissions or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

132.   At no point did Defendants ever compensate Plaintiffs for their use of the Images.

133.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**FIFTH CAUSE OF ACTION**
**(Common Law Right of Publicity)**

- 24 -

134.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

135.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

136.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona, and likeness.

137.    As set forth herein, Defendants used each of the Plaintiff's images and likenesses for commercial purposes by using same in Fox advertising.

138.    Defendants did so without any of the Plaintiffs' consent, written or otherwise.

139.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' images and likenesses on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

140.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

141.    Defendants were at all relevant times aware that they never received any of the Plaintiffs' permissions or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

142.    At no point did Defendants ever compensate any of the Plaintiffs for their use of their Images.

143.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## SIXTH CAUSE OF ACTION
### (Defamation)

144.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

145.     As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Club to the general public and potential clientele.

146.     Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

147.     None of these representations were true.

148.     In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Club, or endorsed the Club.

149.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

150.     In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with the Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

151.     Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

152.    Defendants' publication of Plaintiffs' Images constitutes defamation under Pennsylvania law because said publication falsely accuses each Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

153.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

154.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

155.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Pennsylvania law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

156.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SEVENTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

170.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

171.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

172.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

173.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

174.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

175.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

176.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Pennsylvania law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

- 28 -

177.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

178.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

179.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

180.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

181.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

182.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

183.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

184.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

185.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

186.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

187.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

188.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Images because said publication has assisted Defendants in attracting clientele to their Clubs.

189.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

190.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

191.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

192.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

193.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

194.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

195.    Plaintiffs are therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against

Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first

through tenth causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to

promote the Club;

(c)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action

pursuant to the Lanham Act, 15 U.S.C.§ 1117; and,

(d)  For such other and further relief as the Court may deem just and proper.


Respectfully submitted this ___ day of October 2022.

THE PLAINTIFFS, Jessica Burciaga, Rhian
Sugden, Vida Guerra, Brooke Johnson a/k/a
Brooke Taylor, Jaime Edmondson Longoria,
Emily Scott, Joanna Krupa, Tara Leigh
Patrick a/k/a Carmen Electra, Arianny
Celeste Lopez, Jennifer Walcott-Archuleta,
Eva Pepaj, and Ina Schnitzer a/k/ Jordan
Carver,

 /s/ Hillary B. Weinstein
_____
FIRST LAW STRATEGY GROUP, LLC
Hillary B. Weinstein, Esq. (PA ID. 209533)
121 S. Broad Street, Suite 300
Philadelphia, PA 19107
T: (215) 258-4700
F: (215) 258-4777
hweinstein@firstlawstrategy.com

and

/s/ John V. Golaszewski
_____
John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*